EDWARD W. SUNDER, III, et al.,  )
            )
   Plaintiff(s),     )
            )
  vs.        )   Case No. 4:05CV01153 ERW
            )
U.S. BANK PENSION PLAN, et al.,  )
            )
   Defendant(s).    )

## MEMORANDUM AND ORDER

  This matter comes before the Court on Defendants U.S. Bankcorp Pension Plan, U.S. Bank Pension Plan, Mercantile Horizon 401(k) Investment & Savings Plan, and Mercantile Bank Cash Balance Retirement Plan's Motion for Summary Judgment [doc. #18].

## I. PROCEDURAL HISTORY

  Plaintiffs Edward Sunder III ("Sunder") and Louis R. Jarodsky ("Jarodsky") (collectively "Plaintiffs") filed suit against Defendants alleging: (1) that the formula used to compute Plaintiffs' accrued benefit violates the accrual rules contained in the Employee Retirement Income Support Act ("ERISA"), 29 U.S.C. § 1054(b); (2) that Plaintiffs' lump-sum payouts received in December, 2000, were further reduced because the Defendants applied an unreasonably high rate of interest in the calculation of present value of future benefits under the plan; and (3) that Plaintiffs' lump-sum payouts, received in December, 2000, were further reduced because Defendants unilaterally altered, amended or modified the Plan in such a way as to divest participants of their vested rights under the Plan, and substantially erode the value of participants' accounts and expected benefits, thus reducing the amount of their lump-sum payouts, all contrary

to Defendants contractual obligations and the requirements of ERISA.  After conducting discovery, Defendants filed the pending motion for summary judgment.

## II.  FACTUAL BACKGROUND[1]

Plaintiffs Edward Sunder III ("Sunder") and Louis R. Jarodsky ("Jarodsky") are both former employees of Mercantile Bank, in St. Louis, Missouri; they were employed for 31 and 22 years respectively.  Both Plaintiffs resigned their employment with Mercantile Bank on August 28, 2000.  The Mercantile Bancorporation was the plan sponsor of the Mercantile Bancorporation Inc. Retirement Plan ("the Mercantile Plan").  Firstar Corporation ("Firstar") bought Mercantile Bancorporation on September 20, 1999, at which point the Mercantile Plan was merged into the Firstar Employees Pension Plan ("the Firstar Plan").  On February 27, 2001, Firstar bought the majority of the stock of U.S. Bancorp, with U.S. Bancorp as the surviving entity of the merger.  The Firstar Plan was merged into the U.S. Bancorp Pension Plan ("the U.S. Bancorp Plan").  The U.S. Bancorp Plan later changed its name to the U.S. Bank Pension Plan, which is the name of the surviving entity today.  The Plaintiffs filed suit against four distinct entities, and the parties now appear to be in agreement that the correct named Defendant is U.S. Bank Pension Plan, and the suit can be dismissed against the other three named Defendants.

The Mercantile Plan[2], was amended in 1998 from a traditional defined benefit final average pay plan ("old plan") to a cash balance defined benefit pension plan.  The parties disagree over when the amendment was made: Plaintiffs argue that the change was made September 1, 1998,

---

[1]The Court's recitation of the facts is taken from Defendants' Statement of Uncontroverted Facts, and Plaintiffs' Response to Defendants' Statement of Uncontroverted Facts.  The Court notes where the parties disagree.

[2]Throughout this opinion the Court will refer to the pension plan as the Mercantile Plan, as this was the name of the plan at the time of the alleged ERISA violations, however, the Court notes that the legal entity is the U.S. Bank Pension Plan.

where as Defendants argue that the change was made December 31, 1998.  The parties further disagree over whether the amendment protected all benefits that had accrued prior to the effective date.  Defendants assert that no plan participant received less than his or her accrued benefit under the old plan, Plaintiffs disagree.

A cash balance plan provides participants with an annual notional account balance that allows participants to see their pension expressed each year in the form of a lump-sum benefit.  Each account balance consists of pay credits and interest credits, which the plan sponsor contributes to the participants accounts on an annual basis.  Under the Mercantile Cash Balance Plan, participants received both pay credits and interest credits.  Pay credits were assigned annually to the participants' notional accounts as a percentage of pay, depending upon age.  The percentage increased as the participant's age increased.  Interest credits were added annually to the participant's account balance at a floating rate that was subject to change at the beginning of each calendar year.  The interest rate during a given calender year was either the average yield on ten year Treasury notes, or 5.5%, whichever was higher.  The amended cash balance plan allowed participants to receive a lump-sum distribution of their cash balance upon retirement, or to take the payment options previously available under the defined average pay plan; the lump-sum option was not available under the defined average pay plan.

When the Mercantile Plan changed from a defined benefit average pay plan to a cash balance plan, each participant received an opening account balance.  The parties disagree over how the opening balance was calculated.  Defendants assert that the opening balance was based on the present value of the participant's accrued benefits under the prior benefit formula, and further assert that the method used by Defendants in calculating the opening balance was especially generous as it gave full credit for early retirement subsidies which is not required under

ERISA.  Plaintiffs disagree that the balance was properly computed to account for all accrued benefits under the prior benefit formula, and further state that Defendant's generosity is immaterial.

ERISA allows a plan sponsor to amend a defined benefit pension plan to decrease the rate of future benefit accruals, provided that the sponsor gives notice to participants at least fifteen (15) days prior to the effective date of the plan amendment.  29 U.S.C. § 1054(h) (1998).[3] Defendants distributed § 1054(h) notices to plan participants on December 14, 1998, which specifically stated that "[f]uture benefits that you earn may be greater than, the same as, or less than what you would have earned under the previous plan design."  *Def. Statement of Uncontroverted Facts*, 5.  The notice further stated that "all accrued benefits under the old plan are protected through December 31, 1998."  *Id.*  However, the parties disagree over whether the notice satisfied the § 1054(h) requirements because they disagree over the date which the plan amendment became effective.

Upon the conclusion of their employment with Mercantile, both Plaintiffs were sent letters informing them that they could receive their benefits in a lump-sum or in a variety of life time annuities.  Both Plaintiffs elected to receive their benefits as a lump-sum: Jarodsky received $378,813.03; Sunder received $493,081.19.  When the plan changed to a cash balance plan, the opening balance for Jarodsky was $296,789.39, and for Sunder it was $394,135.31.  The parties do not dispute that the amount in each Plaintiffs' account increased in the two and a half years following the plan amendment to a cash benefit plan.  However, Plaintiffs do disagree over how the opening balance was calculated.

---

[3]This was the rule under ERISA as it existed in 1998, the time of the plan amendment that is at issue in this case.  Since that time ERISA has been amended and § 1054(h), the notice requirement, has been changed to require a more detailed statement and more advanced notice.

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does, in fact, bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative

evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## IV. DISCUSSION

Defendants contend that there are no genuine issue of material fact as to the Plaintiffs' claims, and therefore all three counts can appropriately be dismissed on summary judgment. Before addressing the arguments asserted by Defendants, it is necessary to discuss the background of defined benefit cash balance plans, and how they fit into the ERISA statutory scheme. ERISA requires each retirement benefit plan provided by an employer to fall within one of two categories, either a defined benefit plan or a defined contribution plan.[4] 29 U.S.C. § 1054(b)(1) & (2). *See Also Register v. PNC Financial Services Group, Inc.*, 2007 WL 222019, *3 (3rd Cir. Jan. 30, 2007). A defined contribution plan "means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount

---

[4]Also referred to in ERISA as an individual account plan. The two terms have identical definitions and are used interchangeably. 29 U.S.C. § 1002(34).

contributed to the participant's account, and any income, expenses, gains and losses. . .which may be allocated to such participant's account."  29 U.S.C. § 1002(34); *see also Register*, 2007 WL 222019, at *3 ("a defined contribution plan is a pension plan in which an individual account is established for an employee to which his employer. . .contributes a specific amount.").  A defined benefit plan is defined by the code as "a pension plan other than an individual account plan. . .." 29 U.S.C. § 1002(35).[5]  A defined benefit plan is one in which the employer is "required to offer payment of an employee's benefit in the form of a series of payments for life. . .."  *Burstein v. Retirement Account Plan for Employees of Allegheny Health Education and Research Foundation*, 334 F.3d 365, 370 (3rd Cir. 2003).  A traditional defined benefit plan defines "an employee's benefit as a series of monthly payments for life to begin at retirement. . .."  *Id.*  In contrast, cash balance defined benefit plans "define an employee's benefit in terms of a stated account balance."  *Id.*  Cash balance plans "are often referred to as hypothetical accounts because they do not reflect actual contributions to an account or actual gains or losses allocable to the account."  *Id*.  *See also Register*, 2007 WL 222019, at *3.  A cash balance plan establishes a hypothetical account in each participants name, and benefits are credited to that "account" over time according to the employer's hypothetical contributions and hypothetical interest credits. *Esden v. Bank of Boston*, 229 F.3d 154, 158 (2nd Cir. 2000).  The cash balance plan allows an employee to see the value of her pension plan as a lump-sum amount, and are "designed to mimic the simplicity of a defined contribution plan."  *Id.*  The statute, defines a cash benefit plan as anything other than a defined contribution plan, as cash balance plans do not use individualized employee accounts, they are not defined contribution plans, and therefore by default, they are defined benefit plans.  As the court in *Esden* stated, the "regulatory consequences of this

---

[5]There is a limited exception to this definition which is not relevant to the case at bar.

classification are far-reaching." *Id.* Cash balance plans have become increasingly popular since their introduction in 1985, however, there is still relatively little case law addressing their legality. *In re Citigroup Pension Plan ERISA Litigation*, 2006 WL 3613691, *1 (S.D.N.Y. Dec. 12, 2006). The Mercantile plan, which is at issue in this case, is a cash balance plan.

The Court notes that while it recognizes the popularity of such cash balance plans, and also the benefits that such plans may provide to both employers and employees, this alone is insufficient to find such plans legal under the terms of ERISA. *In re J.P. Morgan Chase Cash Balance Litigation*, 2006 WL 3063424, at *10 (S.D.N.Y. Oct. 30, 2006). The fact that cash balance plans are intended to mimic defined contribution plans helps to explain the way in which such a plan functions, but it does not allow this Court to depart from the statute and apply the rules applicable to defined contribution plans. "However 'hybrid' in design a cash balance plan may be, it remains subject to a regulatory framework that is in many regards rigidly binary." *Esden*, 229 F.3d at 159. Therefore, as a defined benefit plan, cash balance plans "do not always fit in a clear fashion. . . and they sometimes require outcomes that are in tension with the objectives of those plans." *Id.* Furthermore, although policy considerations may weigh heavily in favor of such plans, they will not alter a finding that is clearly in line with the statutory text. *In re J.P Morgan Chase Cash Balance Litigation*, 2006 WL 3063424, at *10 ("These arguments miss the point since the dispute is not over what a better regulatory regime, more accommodating to the design objectives of cash balance plans might look like; the dispute is over how to apply the existing regulations to this Plan." (Internal citation omitted)).

### A. Applicability of Age Based Provision Before Normal Retirement Age

Defendants first contend that Plaintiffs lack standing to assert that the Mercantile Plan violates ERISA § 1054(b)(1)(H), because the age discrimination provision applies only to benefit

accruals after age sixty-five. Therefore, Defendants argue, Plaintiffs, who are both under the age of sixty-five, cannot assert an age discrimination claim under this provision. The statutory language at issue in this case states: "notwithstanding the proceeding subparagraphs, a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H)(I).

The Court is not persuaded by Defendants' argument, as the language of the provision clearly states "because of the attainment of *any* age." 29 U.S.C. § 1054(b)(1)(H)(I) (emphasis added). As stated by a recent New York District Court opinion "[t]he unambiguous meaning of the term 'any' dictates the conclusion that the ERISA anti-age discrimination provision applies to individuals of all ages." *In re J.P. Morgan Chase Cash Balance Litigation*, 2006 WL 3063424, at *5; *see also In re Citigroup Pension Plan ERISA Litigation*, 2006 WL 33613691, at *10 ("By its own terms, the ERISA age provision protects individuals of all ages."); *Richards v. Fleetboston Financial Corp.*, 427 F.Supp.2d 150, 159 (D. Conn. 2006) ("By its own terms, this subsection applies to employees of any age."); *Hirt v. Equitable Retirement Plan for Employees, Managers and Agents*, 441 F.Supp.2d 516, 550 (S.D.N.Y. 2006) ("The application of the age discrimination prohibition contained in section 204(b)(1)(H) of ERISA to workers of all ages is. . . the necessary consequence of the broad language employed by the statute."). Many court's have held that the provision applies to persons of any age, regardless of whether they have ultimately determined that cash benefit plans are age discriminatory.

The Defendant cites a number of opinions that have reached the opposite result, by looking to the legislative history, however the Court is not persuaded. *See e.g. Laurent v. PricewaterhouseCoopers*, 448 F.Supp.2d 537, 552 (S.D.N.Y. 2006). Those courts which have

reached such a conclusion have reasoned that the purpose of the age discrimination provision was to ensure "that employees who choose to work past the age of normal retirement continue to accrue pension benefits. . .." *Eaton v. Onan Corp.*, 117 F.Supp.2d 812, 826 (S.D.Ind. 2000); *see also Laurant*, 448 F.Supp.2d at 552. Although there is some support for this position in the legislative history, the plain language of the text is that it is unlawful to discriminate on the basis of "the attainment of any age," 29 U.S.C. § 1054(b)(1)(H)(I), and therefore it is unnecessary for the Court to look to the legislative history. Plaintiffs have standing to assert the claim that the cash balance plan adopted by Defendants discriminates on the basis of age in violation of ERISA, even though they had not reached normal retirement age when they received their benefits.

**B. Legality of Cash Balance Plans under § 1054(b)(1)(H)(I)**

The age discrimination provision in ERISA for defined benefit plans prohibits the reduction of the rate of an employees benefit accrual on account of age. 29 U.S.C. § 1054(b)(1)(H)(I). The question in this suit is whether the cash balance plan adopted by Defendants violates this provision. The few district court opinions, and two circuit court opinions, that have addressed this issue have clearly framed the question as whether the phrase, rate of benefit accrual, "refers to the employer's contributions to the plan (inputs) or the employee's retirement benefit (outputs)." *In re J.P. Morgan Chase Cash Balance Litigation*, 2006 WL 3063424, at *5. Defendants urge this Court to agree with the two circuit courts in holding that the rate of benefit accrual refers to the contributions made by the employer to the plan. *See Register*, 2007 WL 222019, *11 ("[T]he phrase 'benefit accrual' reads most naturally as a reference to what the employer puts in. . .." (Internal citation omitted)); *Cooper v. IBM Personal Pension Plan*, 457 F.3d 636, 639 (7th Cir. 2006) (same). Plaintiffs urge a different reading, namely that the term rate of benefit accrual refers to the output, the retirement benefit to

which the employee is entitled, and cite a number of district court opinions in support of their position. *See e.g. In re J.P. Morgan Chase Cash Balance Litigation*, 2006 WL 3063424, at *7 ("[R]ate of benefit accrual is defined as the rate at which an employee accumulates retirement payments and cannot mean the contributions (credit balance) the employer makes to the employee's hypothetical account."). If the view is adopted that the term refers to the output, then the argument continues that cash balance plans are discriminatory on account of age, because a younger employee with the same pay contribution and interest contribution as an older employee, will receive more in terms of an age sixty-five annuity, than the older employee, because time and the principle of compound interest, cause the contributions to the younger employee's hypothetical account to grow more. This Court agrees with Defendants, that the term rate of benefit accrual, as applied to cash balance plans, is best read as referring to the employer's contribution to the plan, and not the benefit the employee receives upon retirement. However, there are strong arguments in support of both positions, and the Court will take each argument in turn.

The Court will first address the case law and reasoning supporting Plaintiffs' position that cash balance plans violate the ERISA prohibition on age discrimination. 29 U.S.C. § 1054(b)(1)(H)(I). These cases find that the relevant "benefit" in the term "rate of benefit accrual" is the overall benefit that an employee receives upon retirement, or the annuity at normal retirement age.[6] *In re Citigroup Pension Plan ERISA Litigation*, 2006 WL 3613691, at *11. This interpretation requires that, "in order to avoid age discrimination, the rate at which a participant accumulates her retirement benefit cannot decrease as she ages." *Id.* However, under

---

[6]This is alternately referred to as the age sixty-five annuity, as sixty-five is the age the statute provides as normal retirement age, unless the terms of the plan provide otherwise.

the terms of a cash balance plan, the amount of an age sixty-five annuity that an employee receives in relation to the employer's contributions, decreases as they age, because the employer's contributions to the hypothetical account have less time to grow through the process of compound interest.

Defined benefit plans traditionally define an employees benefit in terms of the normal retirement benefit, usually as a single life annuity paid at normal retirement age. *Esden*, 229 F.3d at 159. The Second Circuit described the cash balance plans provision for a lump-sum payout as an optional form of a benefit, and therefore such lump-sum "must be no less than the actuarial equivalent of such benefit." *Id*. The Second Circuit went on to say that "for a cash balance plan this calculation involves projecting the cash balance forward and then discounting back to present value. The projection rates may be defined by the plan; but the discount rate is prescribed by statute[7]." *Id.* The argument continues, that if a cash balance plan is merely the discounting of a future annuity to present value, as held by the Second Circuit, to determine the lump-sum amount, the rate of benefit accrual must refer to the rate at which the age sixty-five annuity accrues. As one district court held "the rate of benefit accrual is defined as the rate at which an employee accumulates retirement payments and cannot mean the contributions (credit balance) the employer makes to the employee's hypothetical account." 2006 WL 3062424, at *7. Rather than an employee receiving the actual contributions made to the account, these contributions must be translated into an age sixty-five annuity. *Id.* (citing *Edson*, 229 F.3d at 164).

---

[7] 29 U.S.C. § 1053, provides for minimum vesting standards, which requires that an employer cannot forfeit retirement benefits that have already accrued, and provides formula for such calculations. Internal Revenue Notice provides that "a single sum distribution optional form of benefit equal to the hypothetical account balance will satisfy section 417(e) only if the single sum distribution is not less than the present value of the employee's accrued benefit calclulated in accordance with the applicable interest rate and mortality table under section 417(e)(3)." Notice 96-8, 1996-1 C.B. 359-61.

The above definition of benefit in a cash balance plan, combined with the definition of rate of benefit accrual as used in ERISA § 1054(b)(1)(H), leads to the conclusion, Plaintiffs assert, that such plans violate the age discrimination provision. This is because, in order to translate a present cash balance into an age sixty-five annuity, it is necessary to know the participants age. An older individual will have less years in which the amount in the hypothetical account can collect interest, and therefore the annuity will be less than that of a younger individual who has more years to earn interest, keeping constant such factors as years of employment and earnings. "In short, the age discrimination at issue here stems from the required conversion to an age 65 annuity." *In re J.P. Morgan Chase Cash Balance Litigation*, 2006 WL 3063424, at *8; *see also In re Citigroup Pension Plan ERISA Litigation*, 2006 WL 3613691, at *13 ("The short of it is that because of this conversion to an age 65 annuity, younger workers are credited with more years to accumulate interest on their hypothetical accounts."). As a result "a greater value is added to a younger employee's account than to an older employee's account." *In re Citigroup Pension Plan ERISA Litigation*, 2006 WL 3613691, at *13.

Further arguments in support of Plaintiffs' position are found by looking at the fundamental differences between defined contribution and defined benefit plans, and the parallel age discrimination provisions applicable to each type of plan. Plaintiffs argue that it is inappropriate to apply the rules applicable to defined contribution plans, because unlike defined contribution plans, defined benefit plans promise an output, a certain benefit upon retirement. *In re J.P. Morgan Chase Cash Balance Litigation*, 2006 WL 3063424, at *8. Further support for this conclusion is arguably found by looking at the purpose of the parallel provisions on non-discrimination for defined contribution plans and defined benefit plans. 29 U.S.C. § 1054(b)(1)(H)(I) is applicable to defined benefit plans and provides that a plan violates ERISA "if,

under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." In contrast, 29 U.S.C. §1054(b)(2)(A), which is applicable to defined contribution plans, provides that ERISA is satisfied "if, under the plan, allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age." The cases cited by Plaintiffs held that congress could have used the same language, if they intended both to refer to the employer's contribution. *See In re Citigroup Pension Plan ERISA Litigation*, 2006 WL 3613691, at *11 ("I decline defendants invitation to 'seize on the obvious similarities' between the parallel anti-discrimination provisions[,]. . .doing so would ignore the plain language of the statute as well as the critical distinctions between the types of plans.").

While Plaintiffs' position has strong support, the Court finds that cash balance plans, even when analyzed as defined benefit plans under ERISA, do not violate the ban on age discrimination. The two circuit court opinions on point, largely treat cash balance plans as hypothetical defined contribution plans, and tailor their analysis accordingly. As Plaintiffs correctly note in their brief, this argument alone is not sufficient to support a holding that such plans do not discriminate. The fact that defined contribution plans are clearly permissible under the language of ERISA is undisputed. However, cash balance plans are not defined contribution plans, and will not be treated as such by this Court. For purposes of the following analysis it is important to note that the parties do not dispute that the hypothetical pay credits and interest credits at issue in this case are the same regardless of age.[8]

---

[8]In fact, the percentage of an employees pay that was credited to the hypothetical account increased as employees aged.

The phrase "rate of benefit accrual" as used in the age discrimination provision, has led to a lot of discussion by both the district courts which have concluded cash balance plans are age discriminatory, *see e.g. Richards*, 427 F.Supp.2d at 165-166, and by those courts which have concluded cash balance plans are not age discriminatory, *see e.g. Cooper*, 457 F.3d at 639. The Seventh Circuit stated that "[t]he phrase 'benefit accrual' reads most naturally as a reference to what the employer puts in (either in absolute terms or as a rate of change). . .." *Id.* The key distinction is that although a cash balance plan is a type of defined benefit plan, the benefit is the cash balance in the hypothetical account, and not the age sixty-five annuity. *Register*, 2007 WL 222019, at *9 ("Thus, the 'benefit' as used in the phrase "benefit accrual' refers to the stated account balance as that is how the benefit is defined by cash balance plans."). This distinction leads this Court to conclude that cash balance plans do not violate Erisa's age discrimination provision. The cash balance plan provides for a percentage of salary, and a set interest rate, to be contributed to a hypothetical account which results in the employees benefit. The fact that this is a hypothetical account, rather than a personal account is not fatal to the analysis.

This definition of benefit is further supported by contrasting the term "benefit accrual," which is used in the anti-discrimination provision, with the term "accrued benefit." The courts which have concluded cash balance plans are age discriminatory have treated the two terms as identical, both referring to the amount of the age sixty-five annuity. However, the two terms are distinct, and ERISA only defines "accrued benefit." ERISA defines an "accrued benefit" as "the individual's accrued benefit determined under the plan and. . . expressed in the form of an annual benefit commencing at normal retirement age. . .." 29 U.S.C. § 1002(23)(A). "Congress used different phrases in 29 U.S.C. § 1002(23) and § 1054(b)(1)(H), rather than the same phrase, and thus 'benefit accrual' and 'accrued benefit' should be understood to mean different things."

*Finley v. Dun & Bradstreet Corp.*, 2007 WL 196753, at *4. The Court agrees that had Congress intended the term "rate of benefit accrual" to have the same meaning as accrued benefit, they would have used the same term.

The issue that is raised by Plaintiffs, is that in order to translate those hypothetical contributions and interest into a lump-sum figure, it is necessary to project out to normal retirement age, and then discount to present value. However, the Court is not persuaded that this negates the finding that the benefit the employee receives is the hypothetical contributions and interest credits. This conclusion is further supported by the First Circuit decision in *Campbell v. BankBoston, N.A.*, which noted that "there are various methods for determining benefit accrual rates under ERISA, and it is by no means clear that the annuity method is the only permitted method in this context." *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 10 (1st Cir. 2003) (The court did not resolve the ultimate question at issue in the case at bar, because the plaintiff had not raised it before the district court.). This, the court reasoned, rebuts the argument that benefit accrual must be measured in terms of an annuity providing an annual benefit. Once the benefit is defined as the contributions, the alleged discrimination on account of age disappears; as noted above, there was no discrimination in the amount of the pay contributions and interest rate.

Further support for this conclusion is found in the Supreme Court decision *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). In *Hazen Paper* the Court cautioned against confusing age discrimination with a characteristic correlated with age. *Id.* at 611. The Court found that where a characteristic is used in making a determination, and that characteristic is correlated with age, there is no discrimination because "the problem of inaccurate and stigmatizing stereotypes disappears." *Id.* Although the issue in the case at bar is not one of stereotypes because of age, the principle announced in that decision is equally compelling. The alleged discrepancy between

two similarly situated employees, who have completed the same number of years of service, is based on the increased benefit because of the time value of money. Therefore a younger person receives more money at retirement than the older person. However, this is based on time, not age. If a sixty year old and a forty year old have each worked for a company for twenty years, and for that time they have received the same salary, under a cash balance plan they will both have received the same contributions into the plan.[9] Plaintiffs finish that analysis by saying that the younger employee will get more at retirement, however, this is inaccurate; if the older employee were to wait another twenty-five years to take his retirement, he would get the same exact amount as the younger employee receives at age sixty-five. Thus, the discrimination is based not on the age of the employee, but rather on the time value of money, a characteristic correlated with age, but not age itself.

The two circuit court opinions also look to the parallel language in ERISA, that relates to defined contribution plans, which states that a defined contribution plan is not age discriminatory if "the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(2)(A). However, as the Court noted earlier, this reliance on the legality of defined contribution plans, is not persuasive. The language of the two provisions is different, and a cash balance plan is not a defined contribution plan, therefore the language of that provision is not instructive regarding the legality of a cash balance plan. The court's which have relied on the similarity of the provisions have concluded that "the similarities of the anti-discrimination provisions governing defined benefit and defined contribution plans

---

[9]This hypothetical is slightly different from the facts of the case at bar, as under the Mercantile Plan older employees received a higher percentage of their pay as pay contributions to their hypothetical account than younger employees. For purposes of this hypothetical it is assumed the percentage of pay that is contributed by the employer remains the same, regardless of the employees age.

suggest that Congress was not seeking to prohibit the consequences of the time value of money in either circumstance. . .." *Register*, 2007 WL 222019, at *9. Congress may not have been seeking to prohibit the consequences of the time value of money, however, the question is resolved by looking only to the statutory text applicable to defined benefit plans, without reference to the defined contribution plan provisions.

Based on the above analysis, this Court follows the circuit court opinions in the Seventh and Third Circuits in holding that cash balance plans do not violate the ERISA prohibition on age discrimination. There is no evidence that a defined benefit plan must define the benefit as an age sixty-five annuity, and therefore there is no support for the argument that such plans are age-discriminatory. The Mercantile Plan does not discriminate in the amount of pay contributions, nor in the amount of interest that is allocated to each hypothetical account, and therefore there is no violation of 29 U.S.C. § 1054(b)(1)(H)(I).

### C. Violation of the Anti-Backloading Provisions

Plaintiffs also claim under Count I, that the Mercantile Plan fails to satisfy any of the three ERISA anti-backloading provisions. 29 U.S.C. § 1054(b)(1).[10] ERISA § 1054(b)(1) provides

---

[10] This Statute provides, in pertinent part, that:

(b)(1)(A) A defined benefit plan satisfies the requirements of this paragraph if the accrued benefit to which each participant is entitled upon his separation from the service is not less than--(I) 3 percent of the normal retirement benefit to which he would be entitled at the normal retirement age if he commenced participation at the earliest possible entry age under the plan and served continuously until the earlier of age 65 or the normal retirement age specified under the plan, multiplied by (ii) the number of years (not in excess of 33 1/3 ) of his participation in the plan. . ..

(B) A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement

three tests to be used to prevent employer's from backloading, "a term of art describing the plan's use of a benefit accrual formula that postpones the bulk of an employee's accrual to her later years of service." *In re Citigroup Pension Plan ERISA Litigation*, 2006 WL 3613691, at *5. Defendants argue that the only test that is applicable to cash balance plans is the 133-1/3 test set forth in ERISA § 1054(b)(1)(B), and that this test is satisfied in the present case. Defendants expert witness stated in his written report that "although the IRS has yet to provide regulatory guidance on how to apply the anti-backloading rules to cash balance plans, based on what I consider to be a reasonable application of the rules the Mercantile Plan complies with the 133-1/3% rule in ERISA section 204(b)(1)(B)." *Def. Mot. for Sum. Judg.*, Ex. 2, p.30. Plaintiffs do not address this argument in their responsive brief, and as Defendants accurately point out, Plaintiffs' expert witness does not express an opinion on the issue.

---

benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year. . ..

(C) A defined benefit plan satisfies the requirements of this paragraph if the accrued benefit to which any participant is entitled upon his separation from the service is not less than a fraction of the annual benefit commencing at normal retirement age to which he would be entitled under the plan as in effect on the date of his separation if he continued to earn annually until normal retirement age the same rate of compensation upon which his normal retirement benefit would be computed under the plan, determined as if he had attained normal retirement age on the date any such determination is made (but taking into account no more than the 10 years of service immediately preceding his separation from service). Such fraction shall be a fraction, not exceeding 1, the numerator of which is the total number of his years of participation in the plan (as of the date of his separation from the service) and the denominator of which is the total number of years he would have participated in the plan if he separated from the service at the normal retirement age.

29 U.S.C. § 1054(b)(1)(A)(B)(C).

The Court agrees that the only applicable test in the present case is the 133-1/3 percent rule, as the two remaining tests, the three percent rule and the fractional rule, "pertain only to plans that take into account no more than ten years of service in calculating benefits." *Eaton* 117 F.Supp.2d at 843; *see also Register v. PNC Financial Services Group, Inc.*, 2005 WL 3120268, *3 (E.D.Pa., 2005) ("Two of the anti-backloading tests do not apply to benefits calculated using a career pay history. . .. Since a cash balance plan is calculated using a career pay history. . .the plan must satisfy the 133-1/3% rule."), *affirmed on appeal Register*, 2007 WL 222019. Therefore the question before the Court is whether the Mercantile cash balance plan fails to satisfy ERISA's 133-1/3 percent rule. 29 U.S.C. § 1054(b)(1)(B).

"[T]he 133-1/3 percent rule prevents backloading by constricting the fluctuation of accrual rates from year to year." *In re Citigroup Pension Plan ERISA Litigation*, 2006 WL 3613691, at *5. Specifically, ERISA "requires that the value of the benefit accrued in any year may not exceed the value of a benefit accrued in any previous year by more than 33%. *Id.* at *11. In analyzing this question "one must look only at the provisions in force during the current year and apply them as if they had been in effect for all other plan years." *Finley*, 2007 WL 196753, *7. In the present case Plaintiffs accrued benefits at a set rate, based on the terms of the cash balance plan. Those terms provided that participants would receive contributions based on a percentage of pay, and set interest rate. Plaintiffs have failed to provide this Court with any evidence that those terms allowed for accrual of benefits in any given year that were 33% greater than a previous years benefits. Furthermore, Defendants have provided expert testimony to the contrary, that the terms of the Mercantile Plan satisfy the 133-1/3 percent rule as specified above. Therefore Defendants' motion for summary judgment as to both Plaintiffs allegations in Count I is granted.

### D. Interest Rate

Count II of Plaintiff's complaint alleges that an unreasonably high interest rate was used in calculating the lump-sum payout that Plaintiffs received in violation of 26 U.S.C. § 417(e)(3), and further that using an eight percent interest rate in determining the opening balance violated ERISA's anti-cutback provision. Defendants deny that the eight percent rate was used in computing the lump-sum payout that Plaintiffs received, and further argue that in determining the opening balance of the cash balance account, no reduction in accrued benefits occurred. The Court will address each question in isolation.

### 1. Lump-Sum Distribution

26 U.S.C. § 417(e)(3) provides a definition for determining the present value of an annuity, which Plaintiffs argue should have been used in calculating the lump-sum payout. This provision states that "the present value shall not be less than the present value calculated using the applicable mortality table and the applicable interest rate. 26 U.S.C. § 417(e)(3) (2000). The applicable interest rate was defined as "the annual rate of interest on 30 year Treasury securities for the month before the date of distribution or such other time as the Secretary may by regulations proscribe." *Id.* Plaintiffs point to testimony by Eric Topen, in charge of administering the Mercantile pension plan at the time at issue in this case, who said that an eight percent discount rate was used in determining the lump-sum value of Plaintiffs cash balance plan. Defendants dispute this testimony and point to a later portion of Mr. Topen's deposition which states that the eight percent rate was used only in determining the opening balance and not the lump-sum distribution. Plaintiffs further contend that they will present evidence at trial that the correct discount rate was five point two percent. As there is a genuine issue of material fact

regarding the discount rate that was used in calculating the lump-sum distributions that Plaintiffs received, this Court will deny Defendants motion for summary judgment as to that issue.

### 2. Opening Balance Determination

The second claim under Count II alleges that the use of the eight percent discount rate for determining Plaintiffs opening balance, when the Mercantile Plan was changed from a traditional defined benefit plan to a cash balance plan, violated ERISA § 1054(g). The applicable statutory provision states, "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan. . .." 29 U.S.C. § 1054(g). Defendants argue that the opening balances protected all accrued benefits under the old plan. Defendants cite to the Poulin Deposition, stating that Plaintiffs' expert agreed that the Mercantile plan preserved accrued benefits after the amendment. Plaintiffs again argue that the use of the eight percent discount rate resulted in an opening balance lower than the amount of Plaintiffs' accrued benefits. As evidence of this Plaintiffs point to a letter received by Plaintiff Jarodsky, dated April 15, 1998, which stated that his monthly annuity payable at a commencement date of February 1, 2000, was $2,984.77. On February 16, 2000, Plaintiff Jarodsky received a second letter which stated that his life annuity was $2,657.23 per month, using the same commencement date.

Under ERISA no specific discount rate is mandated in determining the opening balance[11], but rather the statute provides only that accrued benefits may not be divested. 29 U.S.C. § 1054(g). Mr. Poulin's testimony supports Defendant's position that only early retirement benefits were eliminated under the Mercantile Plan, not previously earned pension benefits. The evidence cited above by Plaintiffs does not support their allegations, as it shows only that the amendment

---

[11]In contrast to the required discount rate in determining lump-sum distributions, as noted previously.

reduced expected future benefits under the old plan, not accrued benefits. *See e.g. Campbell*, 327 F.3d at 8 ("There was no forfeiture, because no accrued benefits were reduced; only expected benefits were reduced which BankBoston [defendant] could, under the law, modify or eliminate."). As in *Campbell*, only expected future benefits were effected by the conversion of the Mercantile Plan to a cash balance plan. This is supported by Plaintiffs' expert witness who testified that the new plan effected only early retirement benefits that were expected under the old plan, and such benefits are not entitled to protection under ERISA. Therefore, there was no violation of ERISA in the method used to calculate the opening balance, and Defendants are entitled to Summary Judgment of that portion of Count II.

### E. Count III

Count III alleges that the lump-sum payouts received in December, 2000, were reduced because Defendants unilaterally altered, amended, or modified the Mercantile Plan in such a way as to divest participants of their vested rights. This repeats the allegations previously addressed by the Court in section D, of the present opinion. However, Count III also raises the novel question of a violation of the ERISA notice provision. 29 U.S.C. § 1054(h)(1).

The ERISA notice provision, in effect at the time of the plan amendment, stated: "(1) a plan described in paragraph (2) [a defined benefit plan] may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date . . .." 29 U.S.C. § 1054(h)(1) (1998). There are numerous factual issues that come up when addressing the notice requirement. The first, is that the provision in question is only applicable if

the amendment "provide[s] for a significant reduction in the rate of future benefit accrual."[12]  *Id.*

The Court will assume, without deciding, that such a reduction occurred and look to the timeliness of the notice provided to Plaintiffs.  The Defendants assert that the effective date of the amendment was December 31, 1998, and notice was sent on December 14, 1998, satisfying the fifteen day requirement.  Plaintiffs do not address the issue in their response to Defendants' Motion for Summary Judgment.  Sandi Boiler, vice president of Human Resources and Employee Benefits Administration for U.S. Bancorp, testified in her declaration that the plan was amended effective December 31, 1998.  Plaintiffs deny this fact in their response to the Defendants' statement of uncontroverted facts, but provide no evidence in support of their position.  Although the Court must take all evidence in the light most favorable to the nonmoving party, Plaintiffs have failed to provide the Court with any evidence to the contrary, and therefore the Defendants Motion for Summary Judgment as to Count III is granted.

## V.  CONCLUSION

Plaintiffs have failed to satisfy the Court there is a genuine issue of material fact under Count I, and therefore the Defendant is entitled to Summary Judgment on Count I.  The two claims under Count I, are both unsuccessful.  First, The amendment to the Mercantile Plan, which changed it from a traditional defined benefit average pay plan, to a cash balance defined benefit plan, did not violate ERISA's prohibition on age discrimination.  Secondly, Plaintiffs have failed to provide the Court with any evidence to create a genuine issue of material fact that ERISA's anti-backloading provisions were violated.  Plaintiffs have provided evidence of a genuine issue of material fact regarding the use of the eight percent discount rate in calculating Plaintiffs' lump-

---

[12]However, it is important to recognize that it is not illegal to significantly reduce an employees rate of future benefit accruals, it is only illegal to do so without giving notice in accordance with the statute.

sum payouts, but not in calculating the opening balance of the cash balance plan. Therefore Defendants' Motion for Summary Judgment on Count II is denied in part and granted in part. Count III also alleges violations of ERISA in amending the plan, however, the only novel argument under Count III is that the amendment violated ERISA's notice requirement. The Court finds that it did not, and therefore Defendants' Motion for Summary Judgment on Count III is granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants U.S. Bancorp Pension Plan, Mercantile Bank Horizon 401(k) Investment & Savings Plan, and Mercantile Bank Cash Balance Retirement Plan's Motion for Summary Judgment [doc. #18] is **GRANTED** in full, as to those named Defendants.

**IT IS FURTHER ORDERED** that Defendant U.S. Bank Pension Plan's Motion for Summary Judgment [doc. #18] is **GRANTED in part** and **DENIED in part.** Defendant's Motion is **GRANTED** as to Count I, **GRANTED** as to Count II's allegation of a violation of 29 U.S.C. § 1054(g), and **GRANTED** as to Count III. Defendant's Motion is **DENIED** as to the alleged violation of ERISA in calculating the lump-sum payout in Count II.

Dated this <u>16th</u> Day of <u>February</u>, 2007.


_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE