UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD W. SUNDER, III, et al., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:05CV01153 ERW |
| ) | |
| U.S. BANK PENSION PLAN, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant's Calculation of Damages [doc. #76].

## I. BACKGROUND

Plaintiffs filed suit against Defendant on July 25, 2005, alleging violations of the Employee Retirement Income Security Act (ERISA) for impermissibly reducing vested pension benefits, and for discrimination on the basis of age. On March 14, 2007, this Court held a bench trial, following which the Court issued a ruling granting relief to Plaintiffs. The Court ordered that the Defendant provide this Court, within thirty days of the date of the judgment, a copy of the computation of damages. The Defendant filed a motion for reconsideration, which was denied, and subsequently filed a computation of damages, in accordance with the Court's order. Following the entry of the damage award, based on Defendant's computation, Plaintiffs filed a Motion to Amend the Judgment and for leave to conduct limited discovery. On December 6, 2007, the Court granted Plaintiffs' Motion to Amend the Judgment, but denied Plaintiffs' Motion for Limited Discovery. The Court further ordered that Defendants' file a second computation of damages on December 20, 2007. Defendants' again filed a computation of damages, to which

1

Plaintiffs objected. The Court held a hearing on the question of damages on January 30, 2007, and will now conclusively determine the amount of damages owed to Plaintiffs.

**II. DISCUSSION**

The Parties have each submitted their respective calculations of damages, along with any attendant argument. The Court ruled, in its original memorandum and order, that Defendant had violated ERISA by using an 8% discount rate in calculating the original opening balances for Plaintiffs, following the Plan amendment which transformed the plan from a traditional defined benefit plan to a cash balance defined benefit plan. The Defendant raised additional arguments seeking reconsideration of this Court's entry of judgment; the Court will not revisit its final ruling on the merits of Plaintiffs' complaint. The only issue to be decided in this order is the amount of the judgment that Defendant owes to Plaintiffs.

The first question to be determined by the Court is what is the correct starting date for the new calculations. In this Court's original Judgment, the Court ordered that Defendants calculate the new opening balances from January 1, 1999. However, subsequently, the Court was informed that the opening balances were actually calculated as of January 1, 1998, and consequently the Court ordered that this date be used. In the hearing on this matter the Court was informed that although the original opening balances were calculated in January 1, 1998, this was not the effective date of the plan. These calculations were made so that the Defendant could offer the option to those employees who were being laid off, of either taking retirement under the old defined benefit plan, or under the new cash balance plan. For those employees that were not being laid off, they were not eligible to receive retirement under the new cash balance plan until January 1, 1999, the effective date of the plan. While the actual effective date seems like the clear starting point for any calculations under the new plan, this was not the date that was used by the

Defendants, and trying to redo the date of the opening balances creates additional difficulties in calculating the correct award. Defendants originally calculated opening balances as of January 1, 1998, in accordance with the terms of the plan amendment, and there is no data available for what the amount under the old plan would have been as of January 1, 1999, as this conversion date relied upon the opening balances calculated in January of 1998. Plaintiffs suggest that the recalculation be done as of January 1, 1998, but that the discount rate be used based on the conversion date of January 1, 1999. This result would be inconsistent with the terms of the plan. The Court agrees with the Defendant that there is no legal requirement that the opening balances be calculated as of the date of conversion. Therefore, the Court will use the original date of conversion provided by the Defendants, January 1, 1998. This, in turn, implies that the applicable statutory discount rate is the rate that was in effect in September, 1997, 6.5%. This is in accordance with the Court's last order, and in accordance with the terms of the plan amendment.

The final issue to be determined is the addition of interest and pay credits for 1998, 1999, and 2000. In this Court's last order, the Court mistakenly stated Defendants should subtract the newly calculated opening balance from the erroneous original opening balance in order to determine the amount of damages. This was based on the assumption that the interest credits and pay credits had been paid, and therefore, they did not need to be added to the new opening balance calculation. While the Court does not take a position on whether the interest and pay credits were paid for the three years in question,[1] the Court recognizes that by adjusting the amount of the original cash balance, this changes the amount of the interest credits that would

---

[1] The Court has no reason to believe they were not paid. However, the lump-sum pay-outs that the two Plaintiffs received were not broken down into the opening balance plus interest and pay credits, and therefore, such a characterization of the payments is inappropriate.

have been paid.[2] Therefore, it is appropriate to recalculate interest credits as a result of this Court's judgment. These payments will then be added to the new opening balances, along with the pay credits, making a new total of the amount of Plaintiffs' lump-sum distributions. From this new total distribution amount the Court will subtract the amount that was actually paid to Plaintiffs to determine the amount owed. It is to this amount that pre-judgment interest is to be added. Pre-Judgment interest is due from the date of the original distribution, October 31, 2000, at a rate of 5.95%, until the date of judgment, September 24, 2007.

For Plaintiff Louis Jarodsky, the correct opening balance, as of January 1, 1998 is $340,813.92. For the years 1998, 1888, and 2000, Plaintiff Jarodsky was given an interest and pay credit. The interest credit for 1998 was 6.21%, and the pay credit was $9,600.00. The interest credit for 1999 was 5.5%, and the pay credit was $9,600.00. The interest credit for 2000 was 5.5%, and the pay credit was $9,144.27, both the interest credit and pay credit were pro-rated, as Plaintiff Jarodsky withdrew from the plan on October 31, 2000. The same parameters apply to Plaintiff Sunder's damage calculation, with the exception that his pay credit for 2000 was $8,981.19.[3]

On the basis of the above conclusions, the following calculations are correct, and the Defendant shall pay the judgment to Plaintiffs accordingly. To make the calculations easier to follow, the Court has compiled the following chart.

---

[2]The pay credits were based on the Plaintiff's salaries, and therefore remain the same, regardless of the adjustment to the original opening balance. However, the interest credits were based on the present cash balance of the plan, and therefore would have changed as a result of the new calculation.

[3]The Court is not sure why Plaintiffs Jarodsky and Sunder received different pay credits for the year 2000, however, Plaintiffs do not dispute the amount of the pay credits proposed by Defendant, and therefore the Court will use those figures.

|  | **Plaintiff Jarodsky** | **Plaintiff Sunder** |
| --- | --- | --- |
| Revised Opening Balance as of January 1, 1998 (using 6.5% statutory rate). | $340,813.92. | $455,030.20 |
| 1998 Interest Credit-6.21% | $21,164.54 | $28,257.38 |
| 1998 Pay Credit | $9,600.00 | $9,600.00 |
| Total Cash Balance as of January 1, 1999 | $371,578.46 | $492,887.58 |
| 1999 Interest Credit-5.5% | $20,436.82 | $27,108.82 |
| 1999 Pay Credit | $9,600.00 | $9,600.00 |
| Total Cash Balance as of January 1, 2000 | $401,615.28 | $529,596.40 |
| 2000 Interest Credit-5.5% (pro-rated for 10 months, due to withdrawal on October 31, 2000). | $18,407.367 | $24,273.17 |
| 2000 Pay Credit (pro-rated for the period of employment for that year) | $9,144.27 | $8,981.19 |
| Total Cash Balance as of October 31, 2000 | $429,166.92 | $562,850.76 |

The above calculations show that Plaintiff Jarodsky was entitled to a lump-sum payment of $429,166.92, and was only paid a lump-sum payment of $378,813.03. Therefore, Defendant shall pay Plaintiff Jarodsky $50,353.89 plus pre-judgment interest at the rate of 5.95%.

For Plaintiff Sunder, the above calculations show that he was entitled to a lump-sum payment of $562,850.76, and was only paid $493,081.19. Therefore, Defendant shall pay Plaintiff Sunder $69,769.57 plus pre-judgment interest at the rate of 5.95%.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant shall pay damages to Plaintiff Jarodsky in the amount of $50,353.89 plus pre-judgment interest at the rate of 5.95%, for the period from November 1, 2000 to September 24, 2007.

**IT IS FURTHER ORDERED** that Defendant shall pay damages to Plaintiff Sunder in the amount of $69,769.57 plus pre-judgment interest at the rate of 5.95%, for the period from November 1, 2000 to September 24, 2007.

Dated this <u>1st</u> Day of <u>April</u>, 2008.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE